MURPHY, Judge.
 

 *604
 
 The Debruhls appeal from an order requiring the partition by sale of all parcels at issue in this action. On appeal, the Debruhls argue that the trial court erred in finding and concluding that: (1) a partial physical partition of the lands cannot be made without causing substantial injury to one or more of the interested parties; and (2) Janet H. Solesbee and Carl Solesbee (collectively, "the Solesbees"), who sought a partition by sale of the real property, could later pursue an in-kind allotment if the trial court decided against ordering the sale of the parcels, thereby complicating the partial actual allotment sought by the Debruhls. After careful review, we reverse the trial court's decision and remand the case so that the trial court can make the specific findings of fact required by law and then re-examine its conclusions of law.
 

 I. Background
 

 Janet H. Solesbee, Cheryl H. Brown, Gwenda H. Angel, and Lisa H. Debruhl are sisters (collectively, "the Sisters"). Each sister inherited a one-fourth, undivided interest in the real property at issue, located in Asheville, as tenants in common from their father, Walter Honeycutt. The property is comprised of multiple parcels, which were designated as Parcel One, Parcel Two, and Parcel Three by the trial court (collectively, "the Parcels"). The Solesbees and the Debruhls individually own and reside on real property adjacent to Parcels Two and Three. The Parcels and the residences are all zoned for residential use.
 

 *605
 
 On 9 January 2015, the Solesbees petitioned for a partition by sale of the Parcels.
 
 [2]
 
 The Browns and Angels filed a response to
 
 *186
 
 the petition, and they also admitted that a sale was necessary. The Debruhls filed a separate answer to the petition, acknowledging that Parcel One should be sold but also requesting an in-kind allotment of Parcels Two and Three that adjoin their residential property.
 

 On 28 December 2015, the Clerk of Buncombe County Superior Court ordered the Parcels be sold by private sale. The Debruhls timely appealed to the Superior Court. On 3 May 2016, the trial court issued its Corrected Order, in which it concluded that: (1) an actual partition of the lands could not be made without causing substantial injury; and (2) the fair market value of each cotenant's share in an actual partition would be materially less than the amount each cotenant would receive from the sale of the whole.
 

 The trial court arrived at this conclusion after comparing the fair market value of Parcels Two and Three to one-fourth of the combined fair market value of all of the Parcels as a whole. Since the trial court found that "[i]t is inevitable" that the Parcels will be rezoned for commercial use, which would bring "a far higher value for the property than residential use," it assigned a range of fair market values for each Parcel as opposed to a specific value. Specifically, the trial court found that, since "Parcel One is currently zoned for residential use, but could likely be re-zoned for commercial use," the "fair and reasonable market value of Parcel One ... [was somewhere between] $190,000.00 to $300,000.00." For Parcel Two, the trial court found that "[i]n light of the nature of Parcel Two, including being encumbered by numerous sewer line and road easements, extremely steep and rocky terrain, flood plains, and erratic shape, there is practically no useable land on Parcel Two, except as presently being used," making the "fair and reasonable market value of Parcel Two ... $19,550 to $20,000." Finally, the trial court found that there was "practically no or very limited useable land on Parcel [Three]," making the "fair and reasonable market value ... $16,800.00 to $30,000.00."
 

 The trial court then found that the combined value of Parcels Two and Three was $36,350 to $50,000, and that the fair market value of all the Parcels was "$225,350 to $350,000, with a one-fourth interest in
 
 *606
 
 all the Parcels being $56,337.50 to $87,500."
 
 [3]
 
 Accordingly, the trial court found that "[t]he fair market value of Parcels Two and Three combined ($36,500
 
 [4]
 
 to $50,000) is substantially less than one-fourth of the total fair market value ($56,337.50 to $87,500)."
 

 In determining that actual partition would result in substantial injury, the trial court considered these values as well as: (1) the personal value of the Parcels to the parties; (2) the difficulty of physical partition; and (3) the "highest and best use" of the Parcels. Based on these considerations, the trial court ordered that all of the Parcels be sold together as one, or, alternatively, that Parcel One be sold individually and Parcels Two and Three be sold together, whichever would bring the highest sale price. The Debruhls timely appealed from the Corrected Order.
 

 II. Standard of Review
 

 When the trial court sits without a jury:
 

 [T]he standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable de novo.
 

 Lyons-Hart v. Hart
 
 ,
 
 205 N.C. App. 232
 
 , 235-36,
 
 695 S.E.2d 818
 
 , 821 (2010) (emphasis omitted). "[W]hether a partition order and sale should issue is within the sole province and discretion of the trial judge and such
 
 *187
 
 determination will not be disturbed absent some error of law."
 
 Whatley v. Whatley
 
 ,
 
 126 N.C. App. 193
 
 , 194,
 
 484 S.E.2d 420
 
 , 421 (1997).
 

 III. Analysis
 

 The Debruhls do not dispute any of the trial court's findings of fact regarding the valuation of the Parcels, and therefore those findings are binding on appeal.
 
 Greenshields, Inc. v. Travelers Prop. Cas. Co. of Am.
 
 , --- N.C. App. ----, ----,
 
 781 S.E.2d 840
 
 , 842 (2016). However, the Debruhls do dispute: (1) whether some of the findings are truly conclusions of
 
 *607
 
 law; and (2) whether the findings support the trial court's conclusion that substantial injury would occur if a partition in kind were ordered.
 

 We conclude that the trial court erred in its determination that an actual partition cannot be made without causing substantial injury to one or more of the interested parties because the trial court failed to make the specific findings of fact necessary to support an order for partition by sale of the Parcels. Particularly, the trial court failed to make specific findings of fact as to: (1) the value of each individual Parcel; and (2) the value of each share of Parcels Two and Three, were those Parcels to be physically partitioned. Accordingly, we need not address the issue of whether the trial court erred in concluding that the Solesbees could seek an in-kind allotment post judgment.
 

 A tenant in common is entitled, as a matter of right, to a partition of lands in which she has an interest so that she may enjoy her share.
 
 Brown v. Boger
 
 ,
 
 263 N.C. 248
 
 , 256,
 
 139 S.E.2d 577
 
 , 582 (1965). The law favors partition in kind because it "does not ... compel a person to sell his property against his will, which ... should not be done except in cases of imperious necessity."
 
 Id
 
 . at 256,
 
 139 S.E.2d at 582-83
 
 . On that basis, a court will not deny a property owner's right to a partition in kind simply because her cotenants prefer a sale of the property over physical partition or because there are slight disadvantages to it.
 
 Id
 
 . at 256,
 
 139 S.E.2d at 583
 
 . Further, "[s]ince partition in kind is favored, such partition will be ordered, even though there may be some slight disadvantages ... in pursuing such method."
 
 Id
 
 . at 256,
 
 139 S.E.2d at 583
 
 .
 

 Before a trial court can order a partition by sale, then, the trial court must consider whether, by a preponderance of the evidence, "an actual partition of the lands cannot be made without
 
 substantial injury
 
 to any of the interested parties." N.C.G.S. § 46-22(a) (2015) (emphasis added). To overcome the presumption in favor of physical partition, the law requires:
 

 (b) In determining whether an actual partition would cause "substantial injury" to any of the interested parties, the court shall consider the following:
 

 (1) Whether the
 
 fair market value
 
 of each cotenant's share in an actual partition of the property would be
 
 materially less
 
 than the amount each cotenant would receive from the sale of the whole.
 

 (2) Whether an actual partition would result in
 
 material
 
 impairment of any cotenant's rights.
 

 *608
 
 (b1) The court, in its discretion, shall consider the remedy of owelty where such remedy can aid in making an actual partition occur without substantial injury to the parties.
 

 (c) The court shall
 
 make specific findings of fact
 
 and conclusions of law supporting an order of sale of the property.
 

 (d) The party seeking a sale of the property shall have the burden of proving substantial injury under the provisions of this section.
 

 N.C.G.S. § 46-22(b) - (d) (emphasis added).
 
 [5]
 
 In parsing the language of this statute, this state's appellate courts have addressed: (1) whether slight economic disadvantage or convenience are sufficient justifications for ordering a partition in kind; (2) what specific findings a trial court must make before ordering
 
 *188
 
 partition in kind; and (3) whether those requisite findings may be circumvented based on the difficulty of physically partitioning the property at issue.
 

 At times, physical partition can be hampered by the nature of the property at issue. The issue of difficulty of physical partition was addressed by our Supreme Court in
 
 Brown v. Boger
 
 ,
 
 263 N.C. 248
 
 ,
 
 139 S.E.2d 577
 
 (1965). In that case, our Supreme Court considered the appropriateness of a partition by sale of a roughly 1,250 acre property with irregular boundaries as well as different types and grades of land.
 
 Id
 
 . at 252,
 
 139 S.E.2d at 580
 
 . The trial court had found that, "from an economic standpoint," it was in the best interest of the petitioners to sell the property as a whole as actual partition of the lands would cause "financial detriment to those who want to sell," and that the petitioners would "receive more from the sale of the lands as a whole" than they would receive from "the sale of that portion of the lands which would be allotted to them in an actual partition."
 
 Id
 
 . at 253-54,
 
 139 S.E.2d at 581
 
 .
 

 On review, our Supreme Court, however, held that "[s]ince partition in kind is favored, such partition will be ordered, even though there may be some slight disadvantages ... in pursuing such method."
 
 Id
 
 . at 256,
 
 139 S.E.2d at 583
 
 . Furthermore, "[a] sale will not be ordered merely for the convenience of one of the cotenants" because "[t]he physical difficulty
 
 *609
 
 of division is only a circumstance for the consideration of the court."
 
 Id
 
 . at 256,
 
 139 S.E.2d at 583
 
 . In that case, the trial court failed to find "that the 1250 acres of land [could] not be divided so that seven-tenths in value could be allotted to the plaintiffs and three-tenths in value to defendants."
 
 Id
 
 . at 257,
 
 139 S.E.2d at 583
 
 . As such, the Supreme Court asked, "[i]f the land will bring more as a whole, how much more? Will the difference be so material and substantial as to make an actual partition unjust and inequitable?"
 
 Id
 
 . at 259,
 
 139 S.E.2d at 585
 
 . As the trial court's findings failed to answer those questions, our Supreme Court reversed and remanded the case so that the trial court could make the requisite findings.
 
 Id
 
 . at 259,
 
 139 S.E.2d at 585
 
 .
 

 Almost three decades later, in
 
 Partin v. Dalton
 
 ,
 
 112 N.C. App. 807
 
 ,
 
 436 S.E.2d 903
 
 (1993), this Court later considered whether a partition by sale was proper where "neither party presented any evidence as to the current value of the land at the time of trial, nor as to what the value of the land would be were it to be actually partitioned."
 
 Id
 
 . at 809,
 
 436 S.E.2d at 905
 
 . Petitioners in that case only presented evidence that "the acreage nearest Haystack Road was worth roughly $700 per acre" and then provided that "the acreage at the eastern end of the property" was "worth $200 or $400 per acre depending on whether there was a means of access to the property."
 
 Id
 
 . at 809,
 
 436 S.E.2d at 905
 
 . Based on this evidence, that trial court concluded that an actual partition could not be made without causing substantial injury.
 
 Id
 
 . at 812,
 
 436 S.E.2d at 906
 
 .
 

 On appeal, however, this Court disagreed and held that, to be upheld, the trial court's findings of fact "must be supported by evidence of the value of the property in its unpartitioned state
 
 and evidence of what the value of each share of the property would be were an actual partition to take place
 
 ."
 
 Id
 
 . at 812,
 
 436 S.E.2d at 906
 
 (emphasis added). As such, based on the lack of evidence before it, this Court concluded that the "trial court failed to make the required findings of fact that actual partition would result in one of the cotenants receiving a share with a value materially less than the value of the share he would receive were the property partitioned by sale."
 
 Id
 
 . at 812,
 
 436 S.E.2d at 906
 
 . Accordingly, we reversed and remanded the case for a new trial.
 
 Id
 
 . at 812,
 
 436 S.E.2d at 906
 
 .
 

 This Court also recently addressed whether the requirement of specific findings can be circumvented based on the difficulty of physically partitioning the land. In
 
 Lyons-Hart
 
 , the trial court's findings only established that "the property would be difficult to partition in-kind" because, among other things, the property was "very irregular" and the boundary was "not well established."
 

 *610
 

 205 N.C. App. 232
 
 , 238,
 
 695 S.E.2d 818
 
 , 822 (2010). Once again, "the trial court made no findings regarding the value of the property in its unpartitioned state [or] the value of the land
 
 *189
 
 should it be divided" before it concluded that a physical partition could not be made without causing substantial injury to some or all interested parties.
 
 Id
 
 . at 235, 238,
 
 695 S.E.2d at 820, 822
 
 .
 

 As in
 
 Partin
 
 , this Court reversed the decision of the trial court and held that it "must consider evidence of fair market value in determining whether a substantial injury would result from a partition in-kind."
 
 Id
 
 . at 235,
 
 695 S.E.2d at 820
 
 . Thus, "despite evidence that the partition in-kind would be difficult, this Court required a showing of fair market value" in order to sustain a conclusion regarding substantial injury even where there was testimony concerning the value of the property.
 
 Id
 
 . at 235,
 
 695 S.E.2d at 820
 
 .
 

 A. Specific Findings
 

 In the instant case, just as in
 
 Brown
 
 ,
 
 Partin
 
 , and
 
 Lyons-Hart
 
 , the trial court erred in determining that physical partition would cause substantial injury when it did not first consider the fair market value of the Parcels should they be physically divided. Although the trial court considered the combined fair market value of Parcels Two and Three in comparison to the one-fourth interest in
 
 all
 
 parcels, those assessments only indicate the value of the land should it be transferred to only one of the tenants in common. However, there was no evidence as to what the value of the land would be if Parcels Two and Three were physically divided and transferred to several of the tenants in common.
 

 Since the trial court found in finding of fact 21 that, if it were to order a partition in kind of Parcels Two and Three, one or more of the other tenants in common could also request a portion, the trial court necessarily needed to determine the value of those Parcels if that possibility came to fruition. As the trial court's findings fail to indicate the fair market value of Parcels Two and Three if they were divided, they cannot support that court's conclusion that each cotenant's share would be "
 
 materially
 
 less [upon physical partition] than the amount each cotenant would receive from the sale of the whole." N.C.G.S. § 46-22(b)(1) (emphasis added).
 

 As this matter will be remanded, for purposes of judicial economy we also note that the trial court's findings as to the fair market value of the Parcels additionally fail to satisfy the requirements of N.C.G.S. § 46-22 in that, although the trial court acknowledged that the current zoning classification of the Parcels "does not allow commercial or industrial use," it nevertheless considered the possibility that the Parcels
 
 *611
 
 would be rezoned for commercial use at a later date to determine the fair market value of each Parcel. Since commercial use would bring "a far higher value for the property than residential use," the trial court assessed each Parcel's value based on the lower residential and higher commercial value. As a result, instead of assigning precise fair market values, each Parcel was assigned a sweeping range of possible values. For example, the largest discrepancy existed in relation to Parcel One, which the trial court found was valued somewhere between $190,000 and $300,000-with a $110,000 difference between the lowest and highest possible fair market value. Since it is clear from the language of N.C.G.S. § 46-22 and our caselaw that
 
 specific
 
 findings of fact must support an order for the sale of property based on substantial injury, these sweeping ranges cannot be upheld.
 

 B. Substantial Injury
 

 Instead of looking at the fair market value were it physically partitioned, the trial court in this case considered: (1) the personal value of the Parcels to the parties; (2) the difficulty of physically partitioning the land; and (3) the "highest and best use" of the Parcels.
 

 In regard to the personal value of the property, the trial court considered the conflicting desires of the Debruhls and Solesbees and how their ownership of adjacent property affects their interests in the Parcels at issue. Specifically, it considered the fact that the Debruhls hope to continue living on their property and "want[ ] all or a portion of Parcels Two and Three as a buffer to the growing commercial use of the properties," while the Solesbees desire to sell Parcels Two and Three for commercial use in order to increase the fair market value of their
 
 *190
 
 residential property. As such, the trial court found that transferring Parcels Two and Three to the Debruhls "would be an improper favoritism to [them]" and "unequitable and unfair to the other tenants in common," especially the Solesbees, since they also reside near the Parcels.
 

 It is clear from N.C.G.S. § 46-22 and our caselaw that economic factors alone control whether substantial injury exists to disturb the status quo of partition-in-kind.
 
 Partin
 
 ,
 
 112 N.C. App. 807
 
 ,
 
 436 S.E.2d 903
 
 ;
 
 Lyons-Hart
 
 ,
 
 205 N.C. App. 232
 
 ,
 
 695 S.E.2d 818
 
 . Although
 
 material
 
 impairment of any cotenant's rights must be considered in determining whether an actual partition should be ordered, personal value or desired use of the property does not affect
 
 material
 
 impairment of any rights.
 

 Second, the trial court considered the difficulty of physical partition. Specifically, the trial court found that "[d]ue to the saturation of
 
 *612
 
 Parcels Two and Three with easements, and their geographical and shape limitations on use and access across these Parcels, there is no practical way to fairly and equitably divide these parcels into two to four parcels." However, as we have already established,
 
 Brown
 
 makes clear that specific findings as to the fair market value of a piece of property cannot be circumvented by the difficulty of physical partition. In order to deal with land that is difficult to partition physically and to help balance each party's share, N.C.G.S. § 46-22(b1) requires a court to consider owelty. Owelty refers to the ability of a court to order that "a cotenant who receives a portion of the land which has a greater value than his proportionate share of the property's total value, to pay his former cotenants money to equalize the value received by each cotenant."
 
 Partin
 
 ,
 
 112 N.C. App. at 812
 
 ,
 
 436 S.E.2d at 906
 
 .
 

 Specifically, N.C.G.S. § 46-22(b1) requires that "the court, in its discretion,
 
 shall
 
 consider the remedy of owelty where such remedy can
 
 aid in making an actual partition occur
 
 without substantial injury to the parties." (Emphasis added). Although in the present case the trial court did conclude that owelty was not an appropriate remedy, that determination cannot be upheld, even with the discretion granted to the trial court, because the trial court's conclusion was based on inappropriate findings. Until the trial court makes the requisite findings regarding the fair market value of the Parcels, it cannot decide whether owelty is an appropriate.
 

 Finally, the trial court determined that "[o]ffering Parcels Two and Three with Parcel One for sale [would] bring the tenants in common the highest value for the property as a whole" and that "[i]n reality the highest and best use of Parcels Two and Three is to combine them with adjoining property for commercial use." However, such conclusions fail to satisfy the standards required by N.C.G.S. § 46-22. N.C.G.S. § 46-22 does not state that "highest and best use" of the land should factor into the determination of whether actual partition would cause substantial injury. As such, physical partition does not work a substantial injury simply because it would not be the "highest and best use" of the land.
 

 The trial court erred by failing to make specific findings as to the value of each Parcel and the value of each share of the Parcels were those Parcels physically partitioned. It further erred in utilizing factors such as the personal value of the Parcels to the parties, the difficulty of physical partition, and the "highest and best use" of the Parcels in concluding that substantial injury would result by physical partition.
 

 IV. Conclusion
 

 For the foregoing reasons, we reverse the trial court's order and remand with instructions for the trial court to make the specific findings of fact required by N.C.G.S. § 46-22 and our caselaw.
 

 REVERSED AND REMANDED.
 

 Judge CALABRIA and DIETZ concur.
 

 [2]
 

 Although the Sisters' husbands are not record owners of the Parcels, each husband is a proper party to this action because they have inchoate marital interests in the Parcels.
 

 [3]
 

 We note that the sum of $36,350 and $190,000, the value of Parcel One, is $226,350, not $225,350, making the one-fourth interest in all Parcels $56,587.50, not $56,337.50.
 

 [4]
 

 We also note that the trial court refers to the combined fair market value of Parcels Two and Three as $36,500 here, but that the earlier reference to those same Parcels noted their valuation was $36,350, as the sum of $19,550 and $16,800 is $36,350, not $36,500.
 

 [5]
 

 In 2009, the General Assembly amended N.C.G.S. § 46-22(c) to "clarify the standard for determining what constitutes 'substantial injury.' " 2009 North Carolina Laws S.L. 2009-512 (H.B. 578). The phrasing changed from "the court shall specifically find the facts supporting an order of the sale of the property" to "the court shall
 
 make specific findings of fact
 
 and conclusions of law supporting an order of sale of the property."
 
 Id
 
 . (emphasis added).